Good morning. We have one case this morning which is number 17-1277, Ebanks v. Shulkin. Mr. Lippman. Thank you, Your Honor. Mark Lippman, appearing for the petitioner and the appellant, Elon Ebanks. I just wanted to ask if the court wanted any feedback on the recent 28-J letter of the Secretary. Did the hearing take place on October 11th? Yes, it did. So why isn't this case moved? For two reasons, Your Honor. The first one is that it's still a live controversy in the sense that if the court were to take the case and decide it in the appellant's favor, then it would go down and there's still the issue of whether the Veterans Court would issue interim benefits. In other words, there's still partial relief that's possible in the case. So that part makes it still a live controversy. Interim benefits before the board renders its decision, you mean? Right. Did you ask us to mandamus an order of interim benefits? I thought you just asked for a hearing. No, no. What I asked you was to get a proper standard. On whether a hearing was entitled. No, I mean, he's entitled to a hearing. On whether the hearing should be ordered immediately. Right. But the court, as part of its action in deciding whether it's an unreasonable delay or not, can award interim benefits. I don't see where you preserved that for us. It's in the reply brief, Your Honor. No, that doesn't preserve anything. What's the other theory? The other theory is it's capable of repetition but evading review. In other words, would you mind if I could do supplemental briefing on this, if the court is serious about the Moogus issue? Because I haven't... I think you can file a letter on that. But first, under the Kingdome case and earlier Supreme Court cases, in order to satisfy capable of repetition yet evading review, the individual plaintiff in a non-class action situation has to show likelihood of repetition with respect to him individually. This was not a class action case. How is this likely to reoccur with respect to your client? Because he could – let's say the board remands the case again, he can ask for another hearing and be subject to the same delay. He's entitled to... Well, it's not the same delay. It's a different delay. It's the same practice, same policy. Yeah, but if that's the case, if you don't – I mean, if you don't get relief from the board now and you get a delay later, you can ask for mandamus again. And let it moot out once again and then do it again and again. I think that's the very concept of capable of repetition. It would not necessarily moot out. I mean, if you raise the issue, if it happens again, you can raise the issue. You may very well get a hearing here before you get a hearing before the board. Right, but I'm saying that the hearing has been unreasonably delayed. This is his only case, right? Yes. There's no possibility that this would arise in another case involving this individual. Yes, it will have a possibility of arising again. In other words... No, no, but I'm sorry. I'm trying to take this one step at a time. Put this case to one side. Okay. And put to one side the possibility of a remand and a delay as a result of the remand. This is the only case he has in the system, right? Correct. And there's no likelihood he's going to have another case. I don't know. I mean, he could always file another case. I mean, there's no limit to when he could file a case. I'm not sure I understand that. There's no other disability or something like that that might lead to another case, right? I guess not. I just don't see how that's relevant. Okay, but the answer is you guess not. But so in order to find capable repetition yet evading review, we'd have to find that there was, I guess, a likelihood that on the remand of this case that the same delay would occur again. Why is that likely? Because if the board remands, he's going to want to ask for another hearing. And he's entitled to another hearing. And so if he's entitled, we have to go through the same drill. That presumes the board doesn't award benefits. I'm sorry? That presumes the board doesn't award benefits. It usually doesn't, right? But we don't know. It does sometimes. It's less likely. The statistics say no, that they usually don't grant benefits. They remand the great majority. But even if they remand, the RO could award benefits. Could. You don't get another hearing, do you? You get a hearing now. If they order a remand, do you get another hearing? I'd like to brief that. Where? At the RO? At the BVA. It says it's entitled to a hearing on any appeal. I'm not following that. He's had his hearing on this appeal. And if there's a remand, if the board agrees that this claim should be further adjudicated, it would go back to the RO, right? If they remand, right. I mean, sometimes they'll keep it and they'll have additional development on their own through the separate entity. But usually they'll remand it to the RO if they do. But they don't order another hearing immediately before the board, right? Right. So what we are talking about... So let's take the scenario. They remand it to the regional office. The regional office denies it. We ask for another... It goes back to the board for another appeal, and we're entitled to a hearing. That's the language. Any appeal, we're entitled to a hearing. Of course you're entitled to a hearing if it gets denied again on a remand, but that's a chain of events that we don't know whether it's going to happen or not. The RO could certainly award benefits if you get a remand. The BVA could award benefits. So I think it might be useful, unless my colleagues disagree, for you to submit a letter exploring this. You understand the problem that there has to be some likelihood that this individual would have the same issue arise, in his case, in the future. And the question is, you know, under the case law, is the scenario that you hypothesize sufficient? Let me finish. Sufficient to bring him within the capable repetition doctrine. Okay, and I'd also like to also argue the first point that I mentioned, that it's still a live controversy. That there's still partial relief that could be granted. I just don't see how you preserve that, but... To me, it wasn't... I mean... I don't know why... Well, you have to preserve issues for appeal. You're asking us to order the Veterans Court to reconsider its refusal to order a hearing based on a new standard. There's no reason for us to do that, because the Veterans Court won't order a hearing that's already been given. I mean, we can change the standard, but that's an advisory opinion, because you've already gotten your hearing here. You can shake your head at me all you want. I disagree, Your Honor. It's not particularly appropriate, even if you disagree, to shake your head. I apologize, Your Honor. But it's an advisory opinion. You've gotten a hearing, and so we can correct the standard going forward, but it's not going to apply to this particular hearing. Why don't you limit the supplemental briefing to the capable repetition issue? Okay, and we'll give you... How long do you need? Is ten days enough? Sure, ten days is enough. Okay, so why don't you file a letter brief not to exceed five pages within ten days, and then we'll give the government ten days to respond to that. And the response will be limited to five pages also, and just addressing the capable repetition issue. So why don't we, once my colleagues have their questions on the boot list, why don't we move on to the merits of the issue? Fair enough. I'm here today to ask the court to adopt what the Federal Circuit set forth in a case called TRAC, as opposed to the Costanza standard, the arbitrary refusal to act. The arbitrary refusal to act is really no standard at all. It's more irrebuttable presumption in favor of the agency. As long as the agency can show uniformity and non-discrimination in its scheduling, it passes Costanza. Let's back up a moment. What is the problem here? I've taken a look at the annual report of the VA about this process. We've had previous cases involving this, including the Monk case. What's the issue here? There seem to be substantial delays from the time that the veteran files his notice of disagreement until the statement of the case, and then substantial delays between the filing of the statement of the case and adjudication by the board. What's the source of these problems? Some of these problems seem to originate at the regional office in terms of getting the statement of the case done, and some seem to arise at the board. And I understand you're complaining only about a limited period of the delay in granting the hearing, but I think it would be helpful to us to have a broader perspective of what the problems are with this system. That's a good question, Your Honor. I believe that the VA lacks a solid central structure. That what's happening is you have a couple of people and top management leaders trying to implement policy, and then everyone else trying to implement it. And it's fragmented. The planning is flawed often. It's poorly executed. And if I were to do it, if I were to have say, I would say that you need, I mean, we're talking about a mammoth, a mammoth bureaucracy. And you need, I would say, a committee of maybe 20 just outstanding, outstanding... That's not our job to do that. What I'm trying to understand is what is the source of the problems that cause the delay in this system? Is it lack of resources, lack of application of those resources to solve these problems? What's going on? Is it a problem at the regional office? Is it a real problem at the board level? What's the source of the problem here? I don't work for the VA, so I can't tell you exactly... You do a lot of VA cases. You don't have a sense of this? I just think, from my personal experience, there's just a lot of incompetence. I mean, a lot of people that don't know what they're doing. There's not proper oversight. Well, is it a failure on the part of the VA to have enough judges on the board? Is it a failure to have enough equipment to provide these video conferences? Because it seems to me if there is any agency that has the credibility to go to Congress and ask for more money, it's the VA. I would think that you would need more judges that are available to do it. More judges, more equipment? They say they have enough equipment. How many judges are there on the board? I'm going to guess, because I don't know the answer to that question. About 130? Wow. I mean, I have the statistics. I mean, if they've increased to that number, that's good. But at least the last report I have from 2015 shows 63. Okay, I apologize. No, no, I'm not. This is beyond the record. I mean, I'm not criticizing for you. I mean, if you think there are that many more, maybe they've done something in the last year to increase the numbers. I don't know why. Somewhere I read that. Maybe the secretary will have some further information. In this case, Mr. Ebanks requested a video conference, didn't get an answer, requested again, didn't get an answer, requested a third time and finally got an answer. That took 17 months. In your experience, is that normal? It's typical. That's how long it takes for the VA to simply inform the veteran, in this case, that, well, we hear these things on a first-come, first-served basis, and we can't really estimate when you might have a hearing. It seems to me that kind of a response should be something the VA could generate in 20 days, 30 days. I would agree with that. Why does it take 17 months? But you think that's typical? Yeah. Yeah. What's also happening here, and the reason we're here today is that, and this is an issue that was discussed in Monk, the one that dealt with the class action. Were you the counsel in Monk? No. Oh. Is that typically what we've done is we file a petition, there's an order to show cause, and then somebody in general counsel picks up the phone and calls someone at the regional office, and they get it taken care of, and so the writ becomes moot because the relief has been granted. They've decided not to do that now. They're going to insist upon first-come, first-served, and so that's why we're here, and that's why I have several other cases that have been stayed pending the outcome of this case. Okay. Any further questions? We'll give you two minutes for rebuttal. Mr. Cromaldi. Good morning, Your Honors. Before I begin, I just wanted to thank the court as well as Mr. Ebanks and his counsel for agreeing to postpone the matter earlier in September. I appreciate that greatly. Does the TA have a plan? Because this delay is getting really, really long. I mean, I know this is beyond the record, but you have the board statistics. I looked them up. The number of cases appealed to the board has almost doubled in four years. The time for a hearing has gone from 2.5 to almost four years. At some point, even if it's not out of the ordinary, mandamus becomes appropriate. Does it not? Certainly, at some point, mandamus can be appropriate. When is it? Is it four years? Is it five years? Is it ten years? I mean, it's certainly ten years, right? If you're taking ten years to give a veteran who's seeking benefits ten years, then the court's going to step in. I think that would be a lot easier situation for the court to find that under Costanza that there has been unreasonable delay. Has there ever been a writ of mandamus issued to the VA with respect to the hearing time? The pure length of delay, Your Honor, is what you're asking about? Because I'm aware of the Rabaudo case where a writ was granted because the VA had decided to stay all pending board hearings for the outcome of the Haas case. No, no, let's skip that. Based on delay, has the Veterans Court ever issued a writ of mandamus directing the VA to act promptly? I'm not sure one was cited by the parties, Your Honor, so I don't think I'm aware of that. We are aware that for Costanza has been, not only is Costanza When you submit your letter on the mootness issue, would you please include in that information on that point whether the VA has, whether the CABC has ever issued a writ of mandamus because of delay? And don't confine yourself just to the hearing question, but to delay generally in the adjudication process. And is Your Honor asking about pure timeliness of it? Pure timeliness. But it would appear from your comment, if this has never happened, that the standard that the Veterans Court is applying is a very restrictive standard, which basically means there's never going to be relief under these circumstances. Well, Your Honor, I think a lot of what is going on with the timing, and to go back to the questions Your Honor was asking, what is the cause of the delays and what's going on? Why is the Department of Veterans Affairs different than the other agencies that the D.C. Circuit is evaluating administrative action underneath, is that there is a lack of resources at the VA right now. But there's testimony cited in the briefs that there's no resources problem. Actually, the testimony, there's newer testimony now that I'm going to point to, Your Honors, because I'm sure Your Honors are aware of the Veterans Appeals Improvements Modernization Act that was just passed by Congress. And there's a very helpful House report. This is House Report 115-135 from this year. Basically, what we have had in the past was a backlog of claims before the ROs. The Department of Veterans Affairs took steps to alleviate that backlog and push them forward. What that backlog has caused now is a backlog of board appeals because a lot of those RO decisions have been appealed. The House report notes that the increase of appeals is now at 470,000 appeals as of March 31, 2017. Along with this House report that I think is very helpful, there is a GAO report discussing the implementation of the changes that will be made in the Modernization Act. And that is from March 23, 2017. And if Your Honors would like me to attach the GAO report and this House report to the back of our submission, we can do that as an appendix. Why don't you do that? But what is the solution to this problem that is being implemented? So what the Modernization Act is, and I would just like to point out that what's going on with the Modernization Act is that Congress has stepped in and is trying to resolve this issue. We do believe that Mr. Ebanks is trying to make policy through a writ of mandamus, which this Court has found to be inappropriate. I don't think you're making policy when you're saying that there's undue delay. There's a right to have the thing adjudicated promptly, isn't there? Of course not. Absolutely, Your Honor. That's not our policy. That's the policy inherent in the statute and the administrative procedure. Within Mr. Ebanks' arguments against the incompetence and utter indifference of the VA, he does have a cognizable claim before this Court. At some point, the delay can get to the point where it's presumptively unreasonable, even under the Costanza test. Yes, a delay can certainly be unreasonable under the Costanza test, Your Honors, yes. But what is the answer to solving it? Is the VA asking for more resources? Are they getting more court judges? Are they doing something to streamline procedures so that it doesn't take four years to get a hearing? Is it in that statute? What's going on is that at the RO level, an individual is going to have three different options as to how to proceed once they get a decision that is not in their favor. One would be to jump straight to the board. Another one would be to go through the normal process of having a higher level RO person take a look at the claim. Another one would be to submit a supplemental claim with new evidence to support your actual previous claim. Congress hopes, and this will be implemented over time. Are they trying to help speed things up at the board level? Let's say from the time that there's a statement of the case to the time the board resolves the claim. Well, Your Honor, hopefully it will resolve more cases at the RO level so less will be going up to the board to begin with. That's one of the possibilities. But it's not going to do anything for the cases that are already at the board. No. The VA, why isn't the VA asking for more board judges? That is not on the record. I'm not aware of that, Your Honor. How many are there now? I'm not aware of any more than the 63 that Your Honor mentioned. And how many cases are there pending at the board? There are 470,000 appeals as of March 31st, 2017 that's listed in the House report. I mean, how can the board leadership think it can confidently do its job when there are 400,000 cases for 60 judges? How many decisions a year does that mean they have to get through? I'm not sure of the actual number. That would be more math than I can do in my head, Your Honor. But certainly this is a monumental task to clear the backlog of the board. Well, it sounds as though from the statistics that you yourself are quoting that the delays that exist are not going to be less in the future. They're going to be more because the caseload for the board is increased. Well, the caseload is increased because of the clearing of the backlog at the regional offices, Your Honor. So hopefully with the implementation of the Veterans Appeals Improvement Modernization Act, we'll have less cases actually going from the RO to the board because they'll be resolved in a manner that the veteran is pleased with at the RO. So we'll have less appeals and then we'll have less of a backlog in the future because less cases will be going up. As a matter of statistics, even assuming that there are no further appeals to the board, none, how long would it take the board to resolve the cases, the 400,000 cases that it now has before it? Well, I mean, that's a difficult question. A long time, Your Honor, and I can't really come up with an estimate because each case… Years, right? Yeah, it would take years. Each case has its own unique fact patterns and some might require a remand. The board might take a look at it and say this needs to go back. Now, that might be considered to be resolving it, but that case would still technically be alive. So it will take time to clear this backlog, Your Honor. And there's no, I mean, do we have any hope that the four-year time to get a hearing is not going to go up, it's going to come down in the near future? Well, it is. It seems to me it's going to go up. That's a possibility that it could go up, Your Honor. It's not four years right now. Mr. Ebanks asked in 2014, he received it. December 2014 received his in October of 2017. Three years, not great, Your Honor. I'm not trying to tell you that three years is much better than four. So it has gone down then? I mean, again, I pulled statistics from the board things that it was close to four. Is it four years to resolve it or four years for the hearing? Four years to the hearing. Okay, yeah. No, I'm actually not aware of that. Well, I might be looking at… No, that's what my chart says. I could be wrong. You can give us all these statistics in your reply. I mean, the problem here is in a particular mandamus case, you're going to come in and argue, well, he's being treated the same as everybody else. Correct. But at some point, that treatment of everybody has to be subject to judicial review, doesn't it? Oh, absolutely, Your Honor. And who else? I mean, it's an odd posture for an appellate court to be doing that, but who else can do it? They filed cases in district court. They got granted a class action four or five years ago, I think in California or somewhere out west, and the secretary of the Department of Justice got that case quashed because it said the veterans court and our court were the only avenue for judicial review. Correct. Yes, Your Honor, and it's the secretary's position that Congress is in a perfect position to take care of that. Sure. Yeah, absolutely. But there is a dividing line between policy questions and unreasonable delay that is so long that the court has to take action. Correct, and it seems you're getting pretty close to that line. Duly noted, Your Honor. I think that at this point, what's interesting about the e-banks case and what has happened with it is during the pendency of the e-banks case, we did have a passing of this new monetization act. But if I understand correctly, that the new act does nothing to alleviate the problem of delay at the board other than reducing the number of cases coming from the RO. There's no provision for additional board judges, no provision for additional resources to the board. Am I correct about that? I think you are, Your Honor. I'm not aware of any. If there are, we certainly will point that out in our next submission. Why is it that the VA didn't ask for more resources at the board level? I'm not sure if VA asked or not, but I do not believe that they are in the act the way the Congress has written it. The Congress has focused more on the initial claims of the individuals at the RO level and alleviating. If you look at it, it's a bubble, Your Honor. There's a bubble at the bottom and it gets pushed because the backlog is clear. A bubble gets created in the middle where the board is. What Congress is trying to do is stop there from being a bubble at the beginning so it's not pushed up and affects the board, the veterans court. I mean, you know. I understand that. Right. It's desirable, but that doesn't resolve the problem of delays even with the existing 400,000 cases at the board level. It does nothing to alleviate that problem, right? Chances are that those individuals will not directly benefit from the Modernization Act. If they are successful and get remanded to the RO, perhaps then at that situation, but that's only after they've had their hearing, to be honest with you, Your Honor. I want to ask you about your interpretation of how the Costanza Arbitrary Refusal to Act test is implemented. Is it your position that if the government says, if the board says, well, we'll get around to your appeal as soon as we can, we hear cases on a first-come-first basis, we have a huge backlog and we'll get around to it as soon as we can, that that satisfies the Costanza test? Well, that is what the board found, Your Honor. Even if that means that there won't be a hearing for five years or ten years? Well, Your Honor, I mean, certainly at a certain point there could be difficulties withstanding the Costanza test if that first-come-first-served basis looks really like it just never comes. What's the relationship between this just first-come-first-served and any notion of reasonableness? Well, I mean, just waiting in line, Your Honor? I mean, that's pretty reasonable. Most things, the first person to file gets to have their case heard first and so on and so forth. I mean, you go back to basics. Justice delayed is justice denied. And at some point the veteran is going to say, yeah, first-come-first-served, but I can't wait ten years. Absolutely. And hopefully before we ever get to a point there will be some sort of administrative or congressional fix to any problem that occurs. But that's all speculative. There's no plan, right? That's correct, Your Honor. But if we're looking at the case that's before us right now, what we have was we had a three-year wait, which is a long time, honestly, Your Honors, but that hearing has occurred. So we're not talking about— Suppose we issued a writ of mandamus directing that these cases, either in this case or some other case, that these cases at the board level grant a hearing within six months after the filing of the statement of the case. What would the VA do? I think the VA would be overwhelmed. I don't think it has the resources to undertake such a monumental task, Your Honor. I mean, the three-year wait is not because the judges are sitting on their hands. They have a backlog that they're handling. I think that— No, I mean, we're not faulting the judges. Oh, absolutely. I mean, the judges do their job. They hear a lot of cases. But this low number of board judges has been around for years. And the VA has not sought to increase the board in any substantial way for a long time. And they know this problem. They've always known this problem. The delays at the board have been almost inexcusable for way too long. And yet you're coming here. And, again, I'm not faulting you, but I'm frustrated that the VA has no plans to deal with the problems at the board now. Their plans are let's solve the problem for future cases where they have this, as you say, a huge bubble at the board now. That bubble isn't going to get any better at the board, and it's going to pass on to the Veterans Court and to us eventually. Yes, Your Honor. I would categorize the VA's plan as a long game, trying to cut down on this. I think my time is up. If the court would like me to mention anything about mootness, I could have a quick statement. Yeah, I would. But let me ask one last question. What's the status of the Munk case? Is the mandate issued in that? Honestly, Your Honor, I'm not aware of the status of the Munk case. I apologize. Okay. Could you put that in your supplemental filing also? And given the fact that we've expanded the scope of what you're supposed to address, we'll give each side 10 pages. Thank you. I was starting to get worried there, Your Honor. Speaking of Munk, Your Honor, Munk does address mootness, and I think it's applicable here. Munk said that if a veteran receives full relief, they no longer have a legally cognizable mootness. What about Mr. Lippman's argument that this is capable of repetition yet evading review because there is a possibility that Mr. Eubanks himself will face further delay as his case works through the system if there's a remand by the board and an adverse decision at the RO? Sure, Your Honor. I would say two things to that. First, the court has already addressed this issue. I'll be in an unpublished decision in 2007 called Jenkins. That's 216 Fed Appendix 989. That's a situation where the writ of mandamus was stating that the delays in processing the claim overall were taking too long. During the pendency of the appeal before this court, Mr. Jenkins did receive benefits, so his claim was processed. The secretary moved to dismiss based upon mootness. Mr. Jenkins opposed it with a similar argument, saying that he had disagreements with the benefits that he did receive, so he wanted to continue his case. This court found that the case was still moot, even though there was a possibility that he would be going to VA to deal further with his claim because there was regular appellate procedures to deal with that. Similarly, along that line, perhaps it's all just one point, is that if Mr. Eubanks… I'm not sure that that's an answer to this because the appellate procedure would be to seeking review on the undue delay theory. It would be the same issue. Right, and perhaps maybe I didn't use…appellate wouldn't have been the right word to use. There are further procedures that he could follow if he disagreed with his VA benefits. Such as? Well, such as, and I'll tie this into Mr. Eubanks' case, there are administrative procedures to accelerate your hearing date and accelerate the consideration of your claim, procedures that Mr. Eubanks didn't follow. That would be 38 CFR 20.900C, which allows a veteran to request advancement of their document based upon severe financial hardship. He may not qualify. Well, Mr. Eubanks, he might not. We don't know, but Mr. Eubanks did allege that he was under dire financial hardship. So at least he believes that there's an argument there to make. We could speculate that he believes there's an argument there to be made. Well, putting that to one side, does the fact that he might get a remand, might be delayed, might get an adverse decision by the RO, might have to ask for a hearing at the board, is that sufficient to satisfy the capable of repetition standard? Well, it's highly speculative, so we would disagree, Your Honor, and also we would argue there would be a different appeal. Why don't you collect the cases on that? I mean, apart from the one non-presidential decision that you mentioned, particularly from the Supreme Court and other circuits, so that we have some sense of what has the law developed here generally. Of course, Your Honor. Thank you very much, Your Honor. Okay, thank you. Mr. Levin. If the court would just indulge me quickly, Yourself, Judge Hughes. I don't, on the interim benefits, just that part, I don't believe that would be waived because it would have been premature to raise it. In other words, you don't get to those type of reliefs until you prove that there's been an unreasonable delay in the threshold. So if I just might, you know, since there's 10 pages now allowed, if I could just maybe at the second half just address it, just because this case is so important. I just hate to see it go away on a mootness issue. I've got several cases pending, and I'm sure that by the time, if this case is mooted and by the time you lift the stay and then we go forward, we're looking at another six, seven months, they'll have hearings, and this is a big problem of these mootness going away. I mean, there's just not, the time frame is just not, it's just not suitable to get this case or this issue addressed. And so... It doesn't matter to me. You can use your pages however you see fit, but it's not a particularly compelling argument in my view. You can address it if you wanted, but I think you ought to be... Not a compelling argument from my perspective either. Your call. Well, I appreciate your thoughts on that. Just one other thing. Council has mentioned that there's this new Modernization Act that's going to take some of the relief. I'm just wondering why that wasn't mentioned in the brief, if that feels that that's going to save the day. Well, I think they're not saying that it's going to solve the problem at the board level, other than by reducing the number of cases in the future that come to the board. And they have pretty much admitted that it's not going to solve the tremendous backlog problem that exists with respect to the 400,000 pending cases. In your experience, has this backlog problem been a long-standing issue, or is it something that has sort of evolved over time? It's gotten worse. It's not something new. I've been filing writs for timeliness for a long time. Have you ever gotten one granted? No. And part of the reason is that it never gets decided that way, because what's happening, again, and Monk talks about it, is that when you file a writ, up until now, what the VA has been doing is you file the writ, the veteran's job… Taking out of turn. Pardon? Solving the problem in the individual case by taking that particular veteran out of turn. Right. And the court issues an order of sole cause. They call up the regional office. All of a sudden, miracles happen, and the case gets moved. What do you think would happen to the board if this court ordered that all hearings had to be conducted within, I'm going to give them a year, not six months, and we gave them a year to reach that goal? They would do it. See, that's the way they've been operating. How do you think they can do it with 60 judges? Well, they immediately hire judges. Or do they have the resources to do it? Can they achieve that through fund reprogramming? Do the resources exist? Those are relevant considerations under the mandamus standard in the D.C. Circuit, and we don't know what the facts are. When you say that, that's a good point. We don't know what the facts are, and I think the importance of TRAC as opposed to Costanza is it gives some transparency to this analysis. In other words, it may well be that if you remand this case and the Veterans Court says, okay, let's go through some of the factors. You say you have limited resources? Show me. Make it showing, saying we just can't do it, can't meet the standard. Maybe we had the funds to begin with. We squandered it. We're sorry, but the humanly possible can't take it. We can't do anything about it. But I would just like to see... But the VA, isn't the VA restricted also in terms of employment slots? Isn't that fixed by Congress? They can go to Congress. I mean, I don't know the answer to that question, but they're not shy about asking for money and things from Congress. Well, I'm sure that the board judges are line items and appropriation, and they're capped at some level. I don't think they can just reprogram money and double the size of the board. I mean, the other problem is if they have to double the size of the board in a year, are they going to find enough competent people to actually be good board judges, or are you just creating another problem, which is you get a lot of faulty board decisions, which you then have to appeal to the Veterans Court, which doubles their workload, and they have to go out and get more judges. Fair enough argument, but those arguments to me should be made under the track analysis. I mean, the problem with it, and to me the standard, I do find the standard of the Veterans Court's applying a little bit restrictive, but it's not so much the standard, but it's an intractable problem, I can't say that word, of resource allocations and how the VA is doing this, and it's a hard line between us stepping in and exercising our judicial authority and us dictating how the secretary should run the department. Sure, I mean, there's a point where the judiciary crosses the line and is doing the executive's job, but it seems to me Congress has stated what the role is for the judiciary, and that is to shall compel agency action that's been unreasonably delayed. That's pretty strong language. It's not the Veterans Court may compel, it's shall compel. Yeah, but the problem is there are quite a few cases suggesting that if the agency doesn't have the resources to comply, that you can't order them to do something that they're unable to do. Well, if it's humanly impossible, if they can't do it, I would like to at least have a showing. I mean, that's fair. I mean, that's what TROC says. Fair, okay. You don't have the resources. Maybe you use your resources unwisely, something to think, but I would still like to see some transparency. Okay, well, I think we're out of time. Some of this can be addressed in the supplemental briefing. Thank both counsel and cases. That concludes our session for this morning. All rise.